UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cr-00134-FDW-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) |
| | ) ORDER |
| (43) RENAIRE ROSHIQUE LEWIS, JR., | ) |
| | ) |
| Defendant. | ) |
| | ) |

THIS MATTER is before the Court on Defendant Renaire Lewis's Motion to Suppress Defendant's Statement Obtained by Law Enforcement in Violation of Miranda v. Arizona, filed on September 5, 2019. (Doc. No. 2637).

The Court has reviewed Defendant Lewis's motion, as well as the Government's Response to Motion to Suppress Statement. (Doc. No. 2655). After a review of the motion and the response, and after proceedings on the matter held before the undersigned on September 24, 2019, the Court makes the following findings of fact and conclusions of law. For the reasons which follow, Defendant's motion is DENIED.

I. **BACKGROUND**

The parties do not dispute the following background. Sometime in the late evening of July 26, 2016 or early morning hours of July 27, 2016, Defendant Lewis was arrested for the murder of Malik Brown. Lewis gave interviews to local law enforcement detectives shortly thereafter. Approximately eight months after he was arrested, Lewis was interviewed by agents with the Federal Bureau of Investigation ("FBI") about the same murder. At this later interview, Lewis was accompanied by his counsel for the state murder charge. At no point during this interview did Lewis receive Miranda warnings from the FBI agents.

1

## II. FINDINGS OF FACT

Based on testimony from FBI Special Agent David Dawson heard in open court, the Court makes the following findings of fact:

1. David Dawson is a Special Agent with the FBI.

2. Special Agent Dawson has been with the FBI for approximately twenty years.

3. During his tenure with the FBI, Special Agent Dawson has been involved with gang, human trafficking, and terrorism investigations.

4. Special Agent Dawson is a credible witness.

5. Special Agent Dawson has served as co-case agent in the above-captioned case.

6. As part of his duties as co-case agent, Special Agent Dawson assisted in the investigation of the murder of Malik Brown in Chapel Hill, North Carolina.

7. The investigation of Brown's murder included interviewing witnesses.

8. In March 2017, Special Agent Dawson, along with his partner Special Agent James Fallon, interviewed Defendant Lewis on account of racketeering-based charges, including under Violent Crime in Aid of Racketeering (VICAR) and 18 U.S.C. § 924(c).

9. Prior to interviewing Defendant, Special Agent Dawson was aware that Defendant gave at least two other interviews to law enforcement officials which occurred shortly after the murder of Malik Brown.

10. Defendant received Miranda warnings during the two prior interviews.

11. Prior to his interview with Defendant, Special Agent Dawson was under the belief Defendant sought to cooperate with Dawson's investigation.

12. Special Agent Dawson's belief was based on email correspondence between himself,

Assistant United States Attorney Beth Greene, and Defendant's attorney representing him in state court proceedings for the murder of Malik Brown.[1]

13. Special Agent Dawson believed there was not a non-attribution agreement in place, but rather, that Defendant sought to be truthful and assist in the investigation so he might receive assistance or leniency.

14. Special Agent Dawson knew prior to the interview that Defendant's attorney would be present during the interview with Special Agent Dawson.

15. Defendant's attorney was aware of the possibility of future federal indictment of his client.

16. On March 31, 2017, Special Agent Dawson and Special Agent Fallon travelled to the Orange County Sheriff's Office to interview Defendant.

17. Special Agent Dawson and Special Agent Fallon conducted the interview in an administrative area or conference room of the sheriff's office rather than inside the jail.

18. When Special Agent Dawson arrived at the Orange County Sheriff's Office, Defendant was there with his attorney.

19. Defendant, Defendant's attorney, Special Agent Dawson, and Special Agent Fallon were present for the interview.

20. Special Agent Dawson secured his weapon prior to going into the interview; he was

---

[1] The Court notes that references to emails containing hearsay are appropriate here, as the Federal Rules of Evidence do not apply to suppression hearings. See United States v. Raddatz, 447 U.S. 667, 679 (1980) ("[T]he interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself. At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial."); see also United States v. Clenney, No. 1:09cr135, 2009 WL 10677501, at *3 (E.D. Va. July 15, 2009) ("[T]hose rules [Federal Rules of Evidence] do not apply at a suppression hearing to determine the admissibility of evidence.").

unarmed while conducting the interview.[2]

21. Defendant was not wearing handcuffs during the interview; in fact, Defendant used hand gestures in the course of the interview, which gave Special Agent Dawson a view of Defendant's hands. The record is unclear whether Defendant was wearing foot shackles.

22. Defendant did not appear to be otherwise restricted during the interview.

23. There were no jail guards present at the interview, although there were employees of the Orange County Sheriff's Department stationed outside the room and in the halls for the duration of the interview.

24. Neither Special Agent Dawson nor Special Agent Fallon advised Defendant of his Miranda rights prior to or during the interview.

25. Special Agent Dawson did not Mirandize Defendant because he believed the terms of the interview had been set between Assistant United States Attorney Greene and Defendant's attorney. Moreover, Special Agent Dawson thought the presence of Defendant's attorney alleviated the need to inform Defendant of his Miranda rights.

26. During the course of the interview, Special Agent Dawson and Special Agent Fallon thought Defendant was not being truthful, and informed him if he was not honest, the agents would terminate the interview.

27. After continuing the interview for a while, and after threatening to terminate the interview due to what they believed was dishonesty by Defendant, Special Agent Dawson and Special Agent Fallon left the room and allowed Defendant to speak privately with his attorney.

---

[2] In both their memorandum opposing Defendant's motion, as well as during the hearing on September 24, 2019, the Government stated neither agent was armed. E.g., (Doc. No. 2655, p. 2). At no point did Defendant dispute this statement. Although Special Agent Dawson testified only as to securing his firearm prior to the interview, the Court is satisfied neither agent was armed during the interview.

28. The private meeting between Defendant and his attorney lasted a few minutes, after which the interview continued.

29. Defendant did not express hesitation in talking with the agents at any point.

30. The interview ultimately took less than three hours, the entire duration of which Defendant was with his attorney.

31. At no time were Special Agent Dawson or Special Agent Fallon with Defendant outside the presence of Defendant's counsel.

32. During the interview, Defendant admitted he was in a gang.

33. Defendant identified several individuals as part of the United Blood Nation (UBN), including Denzel Spikes, Thomas Oliver, and Jalen Hackney.

34. Defendant further admitted to being involved in a drug purchase with others from Brown.

35. Defendant admitted to being present during the murder of Malik Brown.

### III. ANALYSIS

Defendant contends that because he was not given Miranda warnings, any statements he made to Special Agent Dawson or Special Agent Fallon are inadmissible. (Doc. No. 2637, p. 6). The Government argues that Defendant was not in "custody" for Miranda purposes at the time of the interview, and the warnings are thus inapplicable; even if they were, the presence of Defendant's attorney relieved the agents of any requirement to Mirandize Defendant. (Doc. No. 2655, p. 3-5). The Court addresses each issue in turn below.

#### A. Custodial Interrogation

The Fifth Amendment of the Constitution states "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V. As protection of this

right, it is well-settled law that prior to custodial interview of a suspect, law enforcement officers must inform the individual of his or her Miranda rights. Miranda v. Arizona, 384 U.S. 436, 444 (1966). By the same token, however, a suspect must be informed of his or her rights only when he or she is subject to "custodial interrogation." Id. at 477-78, 482; see also United States v. Hashime, 734 F.3d 278, 282 (4th Cir. 2013). Although Defendant properly recognizes that "failure to give the prescribed warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained," United States v. Mashburn, 406 F.3d 303, 306 (4th Cir. 2005) (quotations omitted), it is also true that determining "custody" under Miranda is a question of fact to be determined by the totality of the "circumstances surrounding the interrogation." Howes v. Fields, 565 U.S. 499, 509 (2012) (quotations omitted). In other words, the inquiry is objective and focuses on whether a "'reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave.'" Id. (alteration in original) (quoting Thompson v. Keohane, 516 U.S. 99, 112 (1995)); see also United States v. Moore, No. 5:14-CR-56, 2015 WL 93659, at *6 (W.D.N.C. Jan. 7, 2015).

In determining how a reasonable person would gauge his or her freedom of movement, courts are to consider several relevant factors. Howes, 565 U.S. at 509. Those factors include the location and duration of questioning; statements made during the interview; the presence of physical restrains during questioning; and the release of the interviewee at the end of the interview. Id. (collecting a string of Supreme Court cases detailing relevant factors for determining custody for Miranda purposes). Courts may also consider the tone of voice and demeanor of the officer. Hashime, 734 F.3d at 283. Other factors include the presence of multiple law enforcement officers, display of a weapon, or physical contact between the officers and suspect. Id. at 283, 285 (holding

that a swarm of federal and state agents removing a suspect at gunpoint are objective considerations weighing in favor of custody). "We reject the argument that Miranda warnings are required whenever a suspect is in custody in a technical sense and converses with someone who happens to be a government agent." Illinois v. Perkins, 496 U.S. 292, 297 (1990). In other words, "imprisonment alone is not enough to create a custodial situation within the meaning of Miranda." Howes, 565 U.S. at 511. Indeed, "[i]n the paradigmatic Miranda situation—a person is arrested in his home or on the street and whisked to a police station for questioning—detention represents a sharp and ominous change, and the shock may give rise to coercive pressures." Id. "When 'the totality of the circumstances demonstrate[] that the "*coercive pressures* that can be brought to bear upon a suspect in the context of a custodial interrogation"' are not present, a court will find that Miranda warnings are not necessary." Moore, 2015 WL 93659, at *6 (emphasis and alterations in original) (quoting United States v. Colonna, 511 F.3d 431, 436 (4th Cir. 2007) (quoting United States v. Uzenski, 434 F.3d 690, 705 (4th Cir. 2006))).

In this case, the totality of the circumstances indicate Defendant was not in custody for Miranda purposes. The interview was arranged ahead of time, and with the assistance of counsel—Defendant's attorney arranged the meeting with AUSA Greene. Moreover, Defendant was not under arrest by the federal agents; instead, the federal agents conducted the interview as part of an ongoing federal investigation regarding racketeering-based charges, not as part of the investigation of the state murder charge facing Defendant. Nor was Defendant taken into federal custody or put under arrest by the FBI agents after the interview. Although the interview occurred at the Orange County Sheriff's Office, Defendant had been held there for several months pending a state murder charge. While he was not serving a prison sentence per se, the length of time Defendant had been

held there minimized "the shock that very often accompanies arrest." Howes, 565 U.S. at 511. Although being held in jail rather than serving a term of imprisonment often weighs in favor of custody, the fact Defendant was held there for eight months—and was not leaving the jail until his trial—Defendant was not "subject[] to more than the usual restraint on [his] liberty to depart," and weighs in favor of a finding of no custody. United States v. Conley, 779 F.2d 970, 973 (4th Cir. 1985). Moreover, neither agent was armed or otherwise displayed a weapon during the interview. The Court also finds that two agents, as opposed to a swarm of agents, see Hashime, 734 F.3d at 285, was not enough to create coercive pressures in light of the presence of Defendant's attorney in the room as well. Equally important is the fact that Defendant had the opportunity to consult with his attorney both before and during the interview. As stated in the findings of fact above, the agents left the interview room in the middle of the interview to enable Defendant and his attorney to speak privately. Thus, Defendant had the ability to stop the interview when he liked. As it pertains to the number of law enforcement officers, Defendant was certainly not "swarm[ed] with federal and state agents . . . [and] rousted from bed at gunpoint," as was the case in Hashime. Hashime, 734 F.3d at 285 (quotations omitted). Additionally, while there were guards and members of the Orange County Sheriff's Office stationed in the hallways outside the interview room, at no point did they enter the room to engage with the interview. The record does not indicate there was any physical contact between Defendant and the agents, which favors a finding of no custody.

The length of time for the interview weighs in favor of a finding of custody, as the Fourth Circuit has generally held an interview of approximately three hours weighs in favor of custody. See id. at 285; see also Colonna, 511 F.3d at 435 (holding a three-hour long interview, even with

breaks, weighs in favor of custody). With respect to the issue of physical restraints, the record is neutral. Although Defendant was not wearing handcuffs, the record is unclear as to whether Defendant was wearing leg shackles. The tone of the agents similarly weighs neither in favor of or against a finding of custody; although the agents threatened to end the interview if they thought Defendant was being dishonest, nothing in the record indicates they raised their voice or otherwise became hostile towards Defendant.

In light of the above circumstances, and given that most factors weigh in favor of a finding of no custody, the Court finds Defendant was not in custody for Miranda purposes. As an independent ground for denying the motion, however, the Court considers the effect of the presence of Defendant's attorney during the interview below.

### B. Presence of Defendant's Attorney

Defendant argues that even with the presence of counsel during the interview, the lack of Miranda warnings requires suppression of any statements he made to the FBI agents. (Doc. No. 2637, p. 6). The government argues the presence of counsel during questioning makes Miranda warnings unnecessary. (Doc. No. 2655, p. 5).

By its own terms, Miranda states the presence of an attorney is the remedy when warnings are not given to a suspect prior to custodial interrogation. Miranda, 384 U.S. at 466 ("The presence of counsel . . . would be the adequate protective device necessary to make the process of police interrogation conform to the dictates of the privilege. His presence would insure that statements made in the government-established atmosphere are not the product of compulsion."). In situations where a suspect invokes his Miranda rights, "the interrogation must cease *until an attorney is present*." Id. at 474 (emphasis added); see also Edwards v. Arizona, 451 U.S. 477, 484-85 (1981)

9

(holding that a suspect who invoked his Miranda rights must not be subject to interrogation "until counsel has been made available to him"). Once the suspect is represented by counsel, however, the interrogation may resume. Miranda, 384 U.S. at 474; Edwards, 451 U.S. at 484-85.

When facing an objection that Miranda warnings are required even where the Defendant has the assistance of counsel, courts have routinely rejected such arguments. Although it does not appear the Fourth Circuit has ruled on such an issue, the overwhelming weight of authority holds that the presence of an attorney during questioning renders Miranda warnings unnecessary. E.g., United States v. Armstrong, No. 1:07-cr-26-SJM-1, 2010 WL 3981005, at *12 (W.D. Pa. Oct. 8, 2010) (collecting cases where courts determined the presence of defense counsel negated the need for Miranda warnings), aff'd sub nom. United States v. Diehl-Armstrong, 504 F. App'x 152 (3d Cir. 2012), cert. denied 568 U.S. 1134 (2013); see also United States v. Brown, 569 F.2d 236, 239 (5th Cir. 1978) ("[W]e do not mandate that Miranda warnings include a specific question naming counsel and an asking if he or she wants that particular attorney present."); United States v. Guariglia, 757 F. Supp. 259, 264 (S.D.N.Y. 1991) ("As a matter of simple logic, if Miranda warnings are meant to protect a defendant until he can consult counsel . . . they are not necessary when counsel is present." (citations omitted)); United States v. Thevis, 469 F. Supp. 490, 507-08 (D. Conn. 1979), aff'd without opinion, 614 F.2d 1293 (2d Cir. 1979), cert. denied 446 U.S. 908 (1980); Commonwealth v. Simon, 923 N.E.2d 58, 67-68 (Mass. 2010), cert. denied sub nom. Simon v. Massachusetts, 562 U.S. 874 (2010); 2 Wayne R. LaFave, Jerold H. Israel, Nancy J. King, & Orin S. Kerr, Criminal Procedure § 6.8(a) (4th ed. 2019) ("It is generally accepted that if

the attorney was actually present during the interrogation, then this obviates the need for the warnings.").[3]

Here, the presence of counsel negated the need for the FBI agents conducting the interview to administer Miranda warnings prior to the interview. By the same token, the Court notes Defendant was with counsel during the entirety of the interview, including during the break; at no point were the agents with Defendant outside the presence of counsel. Although Defendant was represented by different counsel during the interview than counsel presently before the Court, the Court notes there is no requirement that counsel be the same. Accordingly, the presence of the attorney relieved the agents of any requirement to Mirandize Defendant for the interview.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion (Doc. No. 2637) is DENIED, and his statements to law enforcement from the night in question need not be suppressed.

IT IS SO ORDERED.

Signed: March 11, 2020

_____
Frank D. Whitney
Chief United States District Judge

---

[3] The Seventh Circuit takes a different, and what appears to be a minority, view on the issue. See Sweeney v. Carter, 361 F.3d 327, 331 (7th Cir. 2004) ("No authority of which we are aware holds that a suspect's discussions with defense counsel can double for the usual warnings given by law enforcement officers; indeed, the contrary position—that whatever warnings are otherwise required by Miranda must be administered by the public authorities—is quite well-established."). The Court respectfully disagrees with this view, particularly in light of the Supreme Court's more recent denial of certiorari in Simon v. Massachusetts on the same issue. Simon, 562 U.S. at 874. Even though the case there rose through state court (and state courts were tasked with enforcing federal rights), the Supreme Court's refusal to take the case speaks volumes—namely, that the Supreme Judicial Court of Massachusetts was correct in holding that Miranda warnings are not required when a defendant is in the presence of counsel. Simon, 923 N.E.2d at 67-68.